UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AGRI EXOTIC TRADING, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**D MART RUTHERFORD LLC et al.,**<br><br>Defendants. | Civ. No. 21-17794 (KM)(JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Agri Exotic Trading, Inc. ("Agri") initiated this action against D Mart Rutherford LLC, d/b/a D Mart Farmers Market ("D Mart"), KSC Impex Trading, Inc. ("KSC"), and Kajal Chahal ("Chahal") (collectively, "Defendants") for claims under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a, *et seq*, and breach of contract. Because Defendants have failed to answer or otherwise respond to the Complaint, the clerk entered default, and Agri now moves for a default judgment. (DE 5.) For the reasons provided herein, I will grant Agri's motion.

I. Summary[1]

a. Factual Allegations

Agri is a New Jersey corporation with its principal place of business in Clifton, New Jersey. (Compl. ¶3.) D Mart is a New Jersey LLC operating out of

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

"DE" = Docket entry number in this case.

"Compl." = Agri's Complaint (DE 1)

"Fassett Cert." = Certification of Counsel in Support of Motion for Final Judgment Against Defendants (DE 5-2)

1

South Amboy, New Jersey, and also operating as a grocery store doing business as D Mart Farmers Market in East Rutherford, New Jersey. (Compl. ¶4.) KSC is a New Jersey LLC operating out of South Amboy, New Jersey. (Compl. ¶5.) Chahal is a citizen of New Jersey. (Compl. ¶6.)

On July 9, 2021, Agri sold and delivered $12,642.00 worth of produce (the "Produce") to D Mart at D Mart Farmers Market, which D Mart received and accepted. (Compl. ¶¶ 10, 11.) Because D Mart received and accepted the Produce, Agri contends that it became a beneficiary in a statutory trust under PACA (the "PACA Trust"), which "is designed to assure payment to Produce suppliers and which consists of all Produce or Produce-related assets." (Compl. ¶11.) Agri also claims that it timely preserved its interest in the PACA Trust as required by PACA, by including the requisite statutory in invoices delivered to D Mart (the "Invoices"), which D Mart signed. (Compl. ¶11; *see also* Compl. Ex. B.)

According to Agri, despite D Mart accepting the Produce and the terms of the Invoices, D Mart ultimately failed to timely pay Agri for any portion of the principal amount of $12,642.00. (Compl. ¶14.) Moreover, Agri alleges that on July 14, 2021, August 14, 2021, and September 2, 2021, Chahal signed three checks on behalf of D Mart and KSC, which purported to pay Agri against the principal debt owed to Agri by D Mart; however, all three of these checks bounced for various reasons, resulting in Agri incurring "additional bank charges and fees." (Compl. ¶¶15-17.)[2]

Agri alleges that D Mart violated "its statutory, regulatory, and contractual duties" to (1) pay Agri for the Produce and (2) "to turn over [Agri's] PACA Trust assets," instead dissipating Agri's PACA trust assets. (Compl. ¶19.) Agri seeks to hold KSC "jointly and severally liable" for the alleged violations "because at least some of [Agri's] PACA trust assets" were deposited in a KSC-

---

[2]   Agri alleges that the check signed on August 14, 2021 (check number 1002) "bounced because the account was frozen/blocked" and the check signed on September 2, 2021 (check number 1061) "bounced because D Mart stopped payment on the check." Compl. ¶¶16-17.

maintained bank account and then dissipated by KSC. (Compl. ¶20.) Finally, Agri seeks to hold Chahal personally liable for the alleged violations because he "occupied a position of control over [Agri's] PACA Trust assets" and "caused D Mart and/or KSC to dissipate those trust assets." (Compl. ¶20.)

### b. Procedural History

On September 29, 2021, Agri filed this action, invoking the court's jurisdiction under 28 U.S.C. § 1331. The Complaint asserts seven counts in total and five against the Defendants named in the motion for default.[3] Count 1 alleges that the "Defendants' continuing failure and refusal to pay [Agri] the PACA Trust funds belonging to [Agri] in the principal amount of $12,642.00 violates PACA and PACA regulations." (Compl ¶ 25.) Count 2 alleges that "Defendants' continuing failure and refusal to pay [Agri] promptly for the Accepted Produce in the principal amount of $12,642.00 violates PACA and PACA regulations." (Compl. ¶ 2.) Count 3 alleges that the "Defendants' continuing failure and refusal to pay [Agri] the principal amount of $12,642.00 due and owing for the Accepted Produce constitutes a material breach of the contracts between the parties." (Compl. ¶ 31.) Count 4 alleges that "Chahal occupied a position of control over the PACA trust assets belong[ing] to [Agri]" and that "Chahal violated and caused D Mart and/or KSC to violate, their statutory and regulatory duties to preserve PACA Trust assets belonging to [Agri], and to pay [Agri] promptly for the Accepted Produce, by unlawfully dissipating those trust assets." (Compl ¶¶ 34-35.) Count 7 relates to bank charges and fees, interest, and attorney's fees, and asserts that: (1) "PACA and the Invoices require Defendants to pay [Agri], as additional sums owing under the PACA Trust, interest at the rate of 18% per year or the maximum statutory rate, whichever is higher, dating to Defendants' violations of their obligations thereunder"; and (2) "PACA and the Invoices . require Defendants to pay [Agri],

---

[3] Count 5 is directed against "Affiliated Entities – Does" and Count 6 asserts a cause of action for "Unlawful Dissipation of Trust Assets by a Corporate Official" against "Richard Roes 1-10".

3

as additional sums owing under the PACA Trust, attorneys' fees, costs, and expenses incurred in enforcing Defendants' obligations thereunder." (Compl. ¶¶ 43-47.)

Defendants were properly served but failed to answer or otherwise respond to the Complaint. On October 27, 2021, the Clerk entered default. Agri now moves for default judgment and seeks $18,731.88, which represents the unpaid principal debt, bank charges, prejudgment interest, and attorney's fees and costs. (Fassett Cert. ¶ 34.)

## II. Discussion

### a. Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default

judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### b. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, the Summons and Complaint were served on Defendants on September 30, 2021. (DE 5.) Defendants failed to answer or otherwise respond to the Complaint within the deadline and the Clerk's entry of default was duly noted on the docket on October 27, 2021. Therefore, the prerequisites for default have been satisfied.

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

#### i. Factor one: Existence of a meritorious defense

As always, evaluation of the first factor is made difficult by the Defendants' failure to answer or to oppose the motion for default judgment. Nevertheless, my independent review of the record does not suggest that Agri's claims are legally flawed. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Agri has adequately stated claims for relief.

This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1331 because Agri's claims arise under the PACA trust

provisions. 7 U.S.C § 499e(c)(5). The Court additionally has jurisdiction over Agri's breach of contract claim pursuant to 28 U.S.C. § 1367(a).

Moreover, the Court may exercise personal jurisdiction over the Defendants. D Mart and KSA are both organized under the laws of New Jersey and have their principal place of business in New Jersey. (Compl. ¶¶ 4-5; *see United States v. Burgess*, No. 18-1571, 2018 WL 6040268, at *2 (D.N.J. Nov. 19, 2018).) The Court also has personal jurisdiction over Chahal, a New Jersey resident. (Compl. ¶ 6; *see also Burgess*, 2018 WL 6040268, at *2.)

The Complaint asserts causes of action for: (1) failure to preserve and turnover PACA trust funds; (2) failure to pay promptly PACA trust funds; (3) breach of contract; (4) unlawful dissipation of PACA trust assets by Chahal; and (5) a claim for bank charges and fees, interest, and attorneys' fees. (Compl. ¶¶ 24-47.) Agri seeks to hold Chahal "personally, jointly, and severally liable" because "Chahal occupied a position of control over the PACA Trust assets belonging to [Agri] and caused D Mart and/or KSC to dissipate those trust assets." (Compl. ¶ 21.) Agri additionally seeks to hold KSC "jointly and severally liable" because "at least some of" Agri's PACA trust assets "were deposited into a bank account maintained by KSC and were dissipated by KSC." (Compl. ¶ 20.)

Agri has sufficiently pled claims against Defendants under PACA's trust provisions (Counts 1, 2, and 4). PACA makes it unlawful for a merchant, broker, or dealer in commodities to fail to make prompt, full payment to the person whom it made a commodity transaction. 7 U.S.C. § 499b(4). "To ensure, payment, perishable agricultural commodities sold and the proceeds from the resale of those commodities are held in trust by the buyer for the benefit of the seller until full payment is made to the seller." *Spring Valley Produce, Inc. v. Stea Bros.*, No. CIV.A. 15-193, 2015 WL 2365573, at *2 (E.D. Pa. May 18, 2015). A purchaser has "a duty to insure that the PACA trust has sufficient assets to ensure prompt payment of the amounts owed to the seller." *Id.*

Purchasers in breach of these PACA provisions are liable for the "full amount of damages ... sustained in consequence of such violation." 7 U.S.C. § 499e(a).

To create a trust under PACA, "a produce seller must provide the buyer with notice of its intention to preserve trust benefits." *DiMare Homestead, Inc. v. Klayman Produce Co.*, No. CIV.A. 12-2577, 2012 WL 5354597, at *2 (E.D. Pa. Oct. 31, 2012). Notice may be met by providing the following statutory language in an invoice or bill:

> "The perishable agricultural commodities listed on this invoice are subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C. § 499e(c)(4). Agri alleges that it is "licensed as a dealer under PACA" and that on July 9, 2021, Agri "sold and delivered to D Mart at the D Mart Farmers Market, in interstate commerce, $12,642.00 worth of Produce, which D Mart accepted[.]" (Compl. ¶¶ 3, 10.) Additionally, the Complaint contends that upon D Mart receiving and accepting "the Accepted Produce, [Agri] became a beneficiary in a statutory trust under PACA" and that Agri "timely preserved its interest in the PACA Trust ... by delivering to D Mart and the D Mart Farmers Market invoices containing the requisite statutory language ... which D Mart accepted and executed." (Compl. ¶¶ 11, 12.) ⁴ Finally, Agri alleges that "D Mart acknowledged its unconditional acceptance of the Accepted Produce and the terms of the Invoices upon delivery" of the Produce, yet failed to timely pay for any portion of the principal amount of $12,642.00. (Compl. ¶ 14.)

---

⁴ Indeed, upon review of the invoices attached to the Complaint, Agri clearly includes the requisite statutory language to each invoice. *See* Compl. Ex. B.

Accordingly, Agri has sufficiently pled PACA claims for failure to pay trust funds and to make full payment promptly.[5] Agri has also sufficiently alleged a claim against Chahal for the unlawful dissipation of trust assets under PACA (Count 4). (Compl. ¶¶ 33-36.) "[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA."[6] Thus, individual liability may be imposed on an individual under PACA where the person (1) holds a position that suggests a possible fiduciary duty to preserve PACA trust assets; and (2) actually is able to control the PACA trust assets at issue. *Id.* at 172.

Agri alleges that Chahal occupies "a position of control over the PACA trust assets belonging to [Agri]; and is responsible for the debts and obligations owed to [Agri] by D Mart and KSC." (Compl. ¶ 6.) The Complaint also alleges that Chahal signed three checks in purported payment of the Produce, on behalf of D Mart (two checks) and KSC (one check), which bounced and caused Agri to incur additional bank charges and fees. (Compl. ¶¶ 15-17.) The Court finds these allegations sufficient to support finding Chahal personally liable for the dissipation of the PACA Trust assets.

Finally, I find that Agri has sufficiently alleged that KSC should be held jointly and severally liable for the violations of the PACA trust provisions. Agri appears to assert an alter ego theory of liability, asserting that Chahal through his control of D Mart and KSC, dissipated Agri's PACA trust assets. (Compl. ¶¶ 6, 15, 20-21.) New Jersey corporations are presumed to be entities separate from their

---

5       *See Eagle Fruit Traders, LLC v. Ultra Fresh, LLC*, No. CV1814541ESSCM, 2019 WL 5704503, at *10 (D.N.J. Nov. 5, 2019).
6       *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 166 (3d Cir. 2010) (emphasis omitted) (quoting *Golman-Hayden Co. Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000)).

shareholders. *Linus Holding Corp. v. Mark Line Industries, LLC*, 376 F. Supp. 3d 417, 424-425 (D.N.J. 2019). Under New Jersey law, two elements must be shown to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *The Mall at IV Grp. Props., L .L.C. v. Roberts*, Civ. No. 02–4692, 2005 WL 3338369, at *3 (D.N.J. Dec.8, 2005).

Agri alleges that Chahal acted as an "owner, officer director" of KSC, "occupied a position of control" over Agri's PACA trust assets, and is "responsible for the debts and obligations owed to [Agri] by KSC." (Compl. ¶ 6.) The Complaint also asserts that for purposes of paying Agri a portion of the principal debt owed by D Mart, Chahal signed a check on July 14, 2021, on behalf of KSC—which subsequently bounced and caused Agri to incur "bank charges and fees." (Compl. ¶ 15.) Finally, Agri alleges that some of its PACA trust proceeds were deposited in a KSC bank account and were then dissipated by KSC through Chahal. Compl. ¶¶ 20-21.) The Complaint alleges facts that support a finding that Chahal operated KSC as an alter-ego entity, and I will grant Agri's request that KSC, D Mart, and Chahal be jointly and several liable for the damages award.

Finally, I find that Agri has set forth a legally sufficient claim of breach of contract. To establish a breach of contract under New Jersey law, Agri must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir.2007) (internal citation omitted). Under New Jersey law, a contract for the sale of goods "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.J. Stat. Ann. § 12A:2-204(1).

Here, the Complaint alleges specific facts showing that Agri and D Mart entered into a valid and enforceable contract. Agri sold and delivered produce to D Mart, which D Mart accepted unconditionally when it signed the Invoices for the Produce. (Compl. ¶¶ 10, 12, Ex. B.) Under the terms of the Invoices, D Mart is required "to pay interest on unpaid balances at the rate of 18% per year of the maximum statutory rate, whichever is higher, plus all attorneys' fees, costs and expenses incurred in collecting such balances, as additional sums owing in connection with the sales under the PACA Trust." (Compl. ¶ 13.) Despite D Mart acceptance of the Produce and the terms of the Invoices, Agri alleges that D Mart failed to timely pay Agri for any portion of the principal amount of $12,642.000. (Compl. ¶ 14.) Finally, Agri alleges that it has, and continues to suffer damages because of the breach (Compl. ¶ 31), and they are entitled to a judgment in the amount of $12,642.00, interest accrued at 18% per annum, the incurred bank charges and fees, and attorney's fees and expenses incurred in collecting unpaid balances. (Fassett Cert. at 2.) That theory of damages is straightforward and uncontroversial.

In light of the above, I find the first factor supports default.

### ii. Factors two and three: Prejudice to Baymont and defendants' culpability

The second and third factors also weigh in favor of default. Defendants were properly served but failed to appear, defend, or otherwise respond to the Complaint. It is clear that Agri has been prejudiced by this dereliction because it has been "prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's

failure to answer evinces the Defendant's culpability in default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment.

### d. Remedies

In support of its motion, Agri has submitted a certification by their attorney explaining the calculation of Defendants' liability as $18,731.88, which represents: (1) the unpaid principal amount of $12,642.00; (2) contractual interest (calculated 18% per annum or 1.5% monthly) in the amount of $847.88; (3) bank charges in the amount of $150.00; and (4) attorney's fees and costs incurred of $5,092.00. (Fassett Cert. at 2.) The principal amount arises from invoice numbers 739016, 739025, 739043, all dated July 9, 2021. (Compl. Ex. B.) Each invoice states:

> "Interest on unpaid balance shall accrue at the higher of 18% per year or maximum statutory rate. Buyer agrees to pay interest and any and all attorney's fees necessary to collect any balance due hereunder. All interest and attorney's fees shall be

considered sums owing in connection with this transaction under the PACA trust."

(Compl. Ex. B.)

The principal amount of each invoice, along with the contractual interest accrued on the unpaid principal debt through December 6, 2021 is provided below:

| Invoice Number | Date | Payment Date | Principal Amount | Interest |
|---|---|---|---|---|
| 739016 | 07/09/2021 | 07/23/2021 | $3,725.00 | $249.83 |
| 739025 | 07/09/2021 | 07/23/2021 | $5,128.00 | $343.93 |
| 739043 | 07/09/2021 | 07/23/2021 | $3,789.00 | $254.12 |
| TOTALS | | | $12,642.00 | $847.88 |

(*See* Compl. Ex. B; Fassett Cert. at 2.)

According to Agri's certification, Agri also incurred $150 in bank charges and fees attempting to cash check numbers 1045 (dated July 14, 2021), 1002 (August 14, 2021), and 1061 (September 2, 2021). (Compl. ¶¶ 15-17, Fassett Cert. at 3.)

As to attorney's fees and costs, I likewise adopt Agri's analysis. Agri asserts that their attorney's fees and costs total $5,092.00 (consisting of $4,560.00 in attorney's fees and $532.00 in costs). (Fassett Cert. at 3.) Agri based its calculations on a rate of $400 per hour, for 11.4 hours, which I find reasonable and proportionate. (Fassett Cert. Ex. A.) Agri has adequately documented its attorney's fees, which do not seem unreasonable or disproportionate. (Fassett Cert. Ex. A.)

**Conclusion**

For the reasons set forth above, I will grant Baymont's motion (DE 5) for default judgment. An appropriate order follows.

Dated: January 20, 2022

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**